UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                                :
THERESA M. VLAHOS,                              :
                                                :
                    Plaintiff,                  :        **MEMORANDUM AND ORDER**
                                                :
        -against-                               :        02-CV-0139 (DLI)
                                                :
BRUCE SCHROEFFEL as Chief Executive             :
Officer at STATE UNIVERSITY OF                  :
NEW YORK AT STONY BROOK                         :
(SUNYSB), LEE XIPPOLITOS, as Chief              :
Nursing Officer at SUNYSB, RONNIE               :
SCHULTZ, as Associate Director of               :
Nursing at SUNYSB, and GEORGE                   :
TYSON, as Dean of Medical School at             :
SUNYSB,                                         :
                                                :
                    Defendants.                 :
---------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Theresa M. Vlahos brings this action under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"), alleging that defendants failed to restore her to the same position, or an equivalent position, upon her return from work after an FMLA leave of absence. For the reasons set forth below, defendants' motion for summary judgment as to plaintiff's claim under the FMLA for injunctive relief is denied. Defendants' motion for summary judgment dismissing the individual defendants is granted with respect to Bruce Schroeffel, Ronnie Schultz, and George Tyson but denied with respect to Lee Xippolitos.

1

I.      Facts

Plaintiff was hired by the State University of New York at Stony Brook (SUNYSB) in 1985 and became a Nurse Practitioner in 1989. In 1999, plaintiff was appointed as a Senior Nurse Practitioner in the Complementary and Alternative Medicine Unit ("CAM Unit") at SUNYSB. The CAM Unit was a designated center that treated patients with modalities such as Reiki healing, acupuncture, massage, and nutrition.

Plaintiff took leave for medical reasons in April 2001. Sometime thereafter, plaintiff requested an extension of her medical leave because of "[u]nforeseeable events [that] occurred post-operatively."[1] (Defs.' Ex. E.) Specifically, plaintiff requested "Presidential Leave at full pay"[2] for "a chronic condition requiring treatments and medical intervention for an undetermined period of time." (*Id.*) The SUNYSB Department of Human Resources ("HR Department") responded to plaintiff that she "must exhaust . . . sick accruals prior to leave at full pay consideration and approval" and that she had sufficient sick accruals to cover absence through September 2001. (Defs.' Ex. F.) By letter dated October 3, 2001, plaintiff requested an extension of her medical leave and Presidential Leave at full pay. Plaintiff returned to work on or about October 8, 2001. On October 10, 2001, plaintiff signed a form requesting leave under the FMLA based on a "chronic condition." On October 19, 2001, plaintiff wrote a letter to the HR Department asking for a clarification of her sick leave accruals. The HR Department responded by letter dated October 24,

---

[1] Though plaintiff's letter is dated March 25, 2001, it references events that occurred later, such as a phone conversation on May 18, 2001 and a medical event on May 24, 2001. Therefore, the date on the letter must be incorrect.

[2] Presidential Leave is available at the SUNYSB President's discretion under a collective bargaining agreement.

2

2001 that she had "not [been] on presidential leave at full pay" and had instead used her accruals. (Defs.' Ex. J.) The HR Department also noted that plaintiff had accrued additional sick and vacation leave during her period of absence. By letter dated November 16, 2001, the HR Department notified plaintiff that she was not eligible for FMLA leave because she had not worked a minimum of 1250 hours during the 52 consecutive weeks immediately prior to when FMLA leave would begin.

When plaintiff returned to work, the CAM Unit had disbanded. Plaintiff was assigned to work in the Pre-Admission Testing Unit ("PAT Unit") with the same salary and benefits. Plaintiff contends that her position in the PAT Unit is significantly different from her position in the CAM Unit. Plaintiff testified that, in the CAM Unit, she was able to maintain ongoing relationships with patients and see them for follow-up visits, whereas in the PAT Unit, she only sees patients once for a history and physical prior to surgery. Plaintiff emphasizes that the PAT Unit is not service-based, as she cannot see patients post-operatively, write prescriptions, or continue to apply therapeutic interventions. Plaintiff filed suit claiming that defendants have violated the FMLA by not restoring her to the same or an equivalent position.

## II. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S. Ct. 1598, 26 L.

Ed. 2d 142 (1970)). In drawing inferences in favor of the nonmoving party, "the court is not entitled to weigh the evidence." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). Nevertheless, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). The court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### III. FMLA Eligibility

The FMLA was enacted "to balance the demands of the workplace with the needs of families" and to "entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(1)–(2). To this end, the FMLA affords eligible employees "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id*. § 2612. To qualify as an "eligible employee," the employee must have been employed (1) "for at least 12 months by the employer," and (2) "for at least 1,250 hours of service with such employer during the previous 12-month period." *Id*. § 2611.

While it is undisputed that plaintiff has been employed with SUNYSB since 1985, defendants maintain that plaintiff lacks the minimum 1250 hours of service to qualify for FMLA leave. Defendants do not provide employment records or even a specific estimate of "hours of service" but merely state that plaintiff "did not have sufficient 'hours of service' to obtain FMLA protected leave" when she requested FMLA leave on October 10, 2001. (Defs.' Mem. at 8.) Defendants rely on the

4

Fair Labor Standards Act ("FLSA") provision[3] that precludes "payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause . . . and other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). Indeed, "paid vacation and sick time are not considered 'hours of service' within the meaning of 29 U.S.C. § 2611(2)©." *Robbins v. Bureau of Nat'l Affairs, Inc.*, 896 F. Supp. 18, 21 (D. D.C. 1995). Defendants argue that, as plaintiff was not working between April and October 2001, she could not have met the 1250-hour requirement.

Defendants' analysis is erroneous in two respects. First, the employer was under an obligation to determine whether plaintiff qualified for FMLA leave when the request was made initially.

> The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example. The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave (see § 825.305).

29 C.F.R. § 825.302©; *see also Mann v. Mass. Correa Elec., J.V.*, No. 00 Civ. 3559, 2002 WL 88915, at *7 (S.D.N.Y. Jan. 23, 2002) ("Once an employee has given adequate notice of the existence of a serious health need, the employer bears the burden of inquiring further to determine whether the requested leave qualifies for FMLA protection."); *Robbins*, 896 F. Supp. at 19 n.2. Plaintiff is not to be denied FMLA eligibility just because she did not specifically request leave

---

[3] 29 U.S.C. § 2611(2)(C) provides that "hours of service" under the FMLA shall be calculated according to the legal standards established under the FLSA, 29 U.S.C. § 207.

under the FMLA.[4] While the employer may choose among several methods for calculating the year during which the employee is entitled to twelve weeks of protected leave,[5] defendants have not indicated any policy for calculating leave. Nor did defendants, when denying plaintiff FMLA leave, base the denial on a calculation of the "leave year." As defendants apparently have not chosen a method of calculating the "leave year," the regulations provide that the applicable method is "the option that provides the most beneficial outcome for the employee." 29 C.F.R. § 825.200(e). This, coupled with the fact that defendants have not alleged that plaintiff took leave other than accrued sick leave between April and October 2001, means that plaintiff—if requesting leave for a "serious health condition"—would have been entitled to twelve weeks protected leave under the FMLA,

---

[4] Although, generally, "[a]n employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable," or "as soon as practicable" if the leave must be taken immediately, 29 U.S.C. § 825.302(a), "[a]n employer may waive employees' FMLA notice requirements. . . . For example, if an employee (or employer) elects to substitute paid vacation leave for unpaid FMLA leave (see § 825.207), and the employer's paid vacation leave plan imposes no prior notification requirements for taking such vacation leave, no advance notice may be required for the FMLA leave taken in these circumstances." 29 U.S.C. § 825.302(g). From the letters exchanged with plaintiff, it appears SUNYSB did not impose any notice requirements when plaintiff took accrued sick leave, which was readily approved.

[5] Under 29 C.F.R. § 825.200(b),

An employer is permitted to choose any one of the following methods for determining the "12-month period" in which the 12 weeks of leave entitlement occurs:

(1) The calendar year;

(2) Any fixed 12-month "leave year," such as a fiscal year, a year required by State law, or a year starting on an employee's "anniversary" date;

(3) The 12-month period measured forward from the date any employee's first FMLA leave begins; or,

(4) A "rolling" 12-month period measured backward from the date an employee uses any FMLA leave (except that such measure may not extend back before August 5, 1993).

beginning in April 2001.

Defendants also overlook the fact that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for [FMLA] leave . . . for any part of the 12-week period of such leave." 29 U.S.C. § 2612(d)(2)(B). The FMLA also instructs: "If an employer provides paid leave for fewer than 12 workweeks, the additional weeks of leave necessary to attain the 12 workweeks of leave required under this subchapter may be provided without compensation." *Id.* § 2612(d)(1). These provisions have been interpreted to mean that "an employer cannot escape liability under the Act for the period during which the employee, whose leave qualifies under the FMLA, is receiving his wages in the form of sick (or other) pay." *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001). As the Eleventh Circuit has explained:

> [A]n employer who is subject to the FMLA and also offers a paid sick leave policy has two options when an employee's leave qualifies both under the FMLA and under the employer's paid leave policy: the employer may either permit the employee to use his FMLA leave and paid sick leave sequentially, or the employer may require that the employee use his FMLA leave entitlement and his paid sick leave concurrently. . . . Neither Congress nor the Department of Labor could have intended, by using the substitution language, to allow employers to evade the FMLA by providing their employees with paid sick leave benefits. Otherwise, when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act.

*Id.* SUNYSB cannot use its accrued sick leave policy to render plaintiff ineligible for FMLA benefits. If plaintiff qualified for FMLA leave because of a "serious health condition"[6] in April

---

[6] Under the FMLA, a "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves [1] inpatient care in a hospital, hospice, or residential care facility; or [2] continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

2001, then the leave she took would have been protected by the FMLA. Defendants do not challenge whether plaintiff's absence was due to a "serious health condition," as the only reason cited for denying FMLA benefits is failure to meet the 1250-hour requirement. Defendants also do not dispute plaintiff's contention that she routinely worked approximately 37.5 hours per week during the year preceding her April 2001 absence, i.e. around 1950 hours total. Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff qualified for FMLA leave because of a "serious health condition" in April 2001.

## IV. FMLA Restoration

Eligible employees who take leave under the FMLA have a right "(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a). "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a).

"An employee is entitled to . . . reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence." *Id*. § 825.214(a). However, "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been

employed at the time reinstatement is requested in order to deny restoration to employment." *Id*. § 825.216(a). For example, as the regulations instruct, "[i]f a shift has been eliminated, or overtime has been decreased, an employee would not be entitled to return to work that shift or the original overtime hours upon restoration." *Id*. § 825.216(a)(2). The employer is also not required to reinstate an employee who would have been terminated even if he or she had never taken FMLA leave. *E.g.*, *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 245 (6th Cir. 2004).

There is a factual dispute concerning whether plaintiff was restored to an equivalent position and whether plaintiff's reassignment was due to the closing of the CAM Unit, which would have occurred regardless of any FMLA leave taken. Defendants' argument that plaintiff was returned to an equivalent position, because she continued to receive the same salary, is insufficient, as "working conditions, including privileges, perquisites and status" are also to be considered when analyzing whether positions are equivalent. *See* 29 C.F.R. § 825.215(a); *see also Donahoo v. Master Data Ctr.*, 282 F. Supp. 2d 540, 552 (E.D. Mich. 2003) (noting the importance of equivalence in status). A reasonable jury could find that the CAM and PAT positions are not equivalent, as plaintiff lost the ability to see patients for follow-up visits. Even Dr. Lee Ann Xippolitos, Chief Nursing Officer at SUNYSB, admitted that "[c]ertainly in [her] mind's eye, the role between the nurse practitioner in CAM and the nurse practitioner in PAT is different." (*Id*. at 142.) She also testified that the PAT Unit position was offered to plaintiff "under a temporary basis until she found something that suited her more."[7] (*Id*. at 143.) Dr. Xippolitos testified that plaintiff was recently offered a nurse

---

[7] Pointing out that the PAT position was supposed to be temporary does not help defendants. The FMLA does not allow the employer reasonable time to return an eligible employee to an equivalent position.

[T]he structure of the FMLA does not require the court to read a reasonableness

practitioner position in the bariatric surgery department, which she refused, but Dr. Xippolitos admitted that this position involved a lower SL5 salary.

There is also a question of fact as to the exact timeline and details of the restructuring. Plaintiff admitted at her deposition that she was aware of meetings that took place sometime in 2000 to discuss that the CAM Unit might close. She also testified that two doctors communicated to her at the time "[t]hat the future of the CAM Center was unclear." (Vlahos Dep. at 31.) Dr. Xippolitos, Chief Nursing Officer of SUNYSB, testified that the CAM Unit was "retrenched," meaning that it "was eliminated from the structure within the hospital and the Health Science Center." (Xippolitos Dep. at 49.) She testified that "the university tried very hard to find positions for . . . individuals [previously working in the CAM Unit] to go to so they would not lose their jobs." (*Id.* at 50.) Though she could not recall exactly where all CAM employees were reassigned, she mentioned that two employees were reassigned to nursing and that one physician was reassigned to work in preventive medicine. (*Id.* at 50–51.) Dr. Xippolitos testified that, upon plaintiff's return, the position plaintiff hoped to return to no longer existed and that she informed plaintiff "that at that point in time [the hospital] was not developing that role," that "[t]here was no financial backing or

---

> element into the restoration provision. The provision permitting an employer the opportunity to restore an employee to the same position or an equivalent does not express clear Congressional intent to permit employers a reasonable time to delay restoration. The "equivalent position" provision under § 2614(a)(1)(B) recognizes the dynamic needs of employers and permits them to restore employees to positions other than the exact one they left, but it does not permit the employer to delay an employee's restoration for a "reasonable time" after returning from FMLA leave. Likewise, the requirement under 29 C.F.R. § 825.214(b) that a returning employee be capable of performing the essential functions of the job does not impart a reasonable delay period for the employer to find a suitable position.

*Hoge*, 384 F.3d at 249.

necessity to develop that role in the hospital," and that "the only position . . . available at the time was in preadmission testing." (*Id*. at 100.)

However, according to plaintiff's deposition testimony, the CAM Unit was not closed but renamed the "Division of Wellness and Chronic Illness." Although Dr. Xippolitos testified that she has not heard of such a division, the court takes judicial notice that the Stony Brook University Hospital website, http://www.stonybrookhospital.com, presently contains a description of "[t]he Wellness and Chronic Illness Program, [which] is a Division of the Department of Family Medicine at SUNY Stony Brook. The Wellness Program offers integrative primary care as well as chronic illness consultations. Integration includes state-of-the-art family medicine as well as mind/body, botanical and nutritional medicine."

Plaintiff testified that, upon her return to work, the patients she used to treat were still coming in for treatment. Plaintiff testified that Patricia Catalino, a licensed massage therapist, had taken over her former staff supervision duties, that Janet Bienkowski, another nurse practitioner, was hired to follow her previous patients, and that a woman named Sabra Boughton took over the educational classes she used to teach. Dr. Xippolitos testified she did not know whether the role that the CAM Unit had occupied within SUNYSB was reassigned to another division. Especially given the lack of specific detail regarding the restructuring, a reasonable jury could conclude that these employees took over plaintiff's functions because of her absence rather than a restructuring.

Plaintiff also argues that she was improperly denied an equivalent position working as a nurse practitioner in acute pain management under Dr. Paul Willoughby. Although Dr. Willoughby cannot remember when he interviewed plaintiff, which may have occurred after plaintiff was already working in the PAT Unit, Dr. Willoughby testified that, as early as January 2001, he was looking to

11

fill the position. Dr. Willoughby testified that plaintiff "was the best candidate of the pool." (Willoughby Dep. at 21.)

As questions of fact remain regarding the cause of plaintiff's move to the PAT Unit, whether the CAM Unit actually closed, and whether the PAT Unit position was equivalent, defendants' motion for summary judgment is denied.

## V. Qualified Immunity and Individual Defendants

Defendants are not entitled to assert a qualified immunity defense. "Qualified immunity applies to claims for monetary relief against officials in their individual capacities, but it is not a defense against claims for injunctive relief against officials in their official capacities." *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004) (citing *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993)).

Defendants also argue that, because plaintiff fails to substantiate with specificity her claims against each defendant, the individual defendants must be dismissed. Defendants argue that Schroeffel, Schultz, and Tyson are never mentioned in plaintiff's opposition papers and that plaintiff never deposed these defendants. The FMLA's definition of "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii). Plaintiff seems to concede that only Dr. Xippolitos falls under the definition of "employer," as she does not mention any of the other individual defendants by name in her opposition papers. Plaintiff's only response to defendants' argument that Schroeffel, Schultz, and Tyson were never deposed is to point to Dr. Xippolitos' deposition testimony that she was responsible for personnel decisions in the nursing division and that she personally made the decision

12

to assign plaintiff to the PAT Unit upon her return to work. Thus, defendants' motion for summary judgment is granted as to defendants Schroeffel, Schultz, and Tyson but denied as to defendant Xippolitos.

**VI.     Conclusion**

Defendants' motion for summary judgment is denied with respect to plaintiff's claim under the FMLA for injunctive relief and the inclusion of Dr. Xippolitos as a defendant but granted with respect to dismissal of individual defendants Schroeffel, Schultz, and Tyson.

SO ORDERED.

DATED:      Brooklyn, New York
            March 6, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge